154 So.2d 490 (1963)
Hilton H. WILKINSON
v.
Zeno HUSSER, Rose Husser and Harvey Husser d/b/a Husser's Store.
No. 5873.
Court of Appeal of Louisiana, First Circuit.
June 3, 1963.
Rehearing Denied July 1, 1963.
*491 Schilling & Simpson by Joe Simpson, Amite, for appellant.
Palmer & Palmer by Charles B. W. Palmer, Amite, for appellee.
Before LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiff, Hilton H. Wilkinson, instituted this action in tort seeking recovery of damages from defendants, Zeno Husser, Rose Husser and Harvey Husser, for personal injuries allegedly sustained as the result of a practical joke played upon plaintiff by defendant, Zeno Husser. In the court below, defendants, Rose and Harvey Husser (husband and wife) moved the court for summary judgment in their favor dismissing and rejecting plaintiff's demands as to them. Our learned brother below granted said defendants' motion for summary judgment and from said adverse ruling plaintiff has appealed.
In essence plaintiff's suit is for damages for personal injuries allegedly sustained when, by invitation and inducement of defendant, Zeno Husser, plaintiff sat in a "trick chair" so designed and constructed as to collapse when occupied. Plaintiff's *492 petition, as supplemented and amended, in substance, alleged that on January 4, 1963, plaintiff, accompanied by his mother, with the intention of making a purchase, patronized a commercial establishment characterized as an antique and furniture store operated and run by defendant, Zeno Husser, in partnership or as a joint venture or common enterprise with defendants, Rose and Harvey Husser. It is further alleged that while examining merchandise in the store, plaintiff was invited by defendant, Zeno Husser, to try a chair located on the front porch of the establishment. The petition charged the chair in question was what is known and referred to as a "trick chair" constructed with springs and hinges designed to hold the chair in a normal upright position but equipped with rollers on the ends of each leg to permit the legs to spread out and the chair to collapse when weight is put on the seat of the chair thus causing an occupant to experience a sudden and forceful fall. It is averred the entire mechanism of the device was cleverly concealed with cloth or leather fringe in order not to arouse suspicion on the part of any intended victim of the practical joke thus perpetrated. Plaintiff further charges the chair is inherently dangerous and can be reasonably expected to cause injury. Plaintiff also alleges the chair remained on defendants' premises for a period of approximately four years and defendants either knew or should have known it constituted a trap or pitfall on their property. Alternatively, plaintiff maintains that if the premises in question were not owned by defendant, Zeno Husser, they were then in fact owned by appellee, Rose Husser, wife of Harvey Husser, and both said defendants, Rose and Harvey Husser, knew or should have known said dangerous instrumentality was being used on their premises. Finally, it is alleged the store in which the accident occurred was situated in one of three buildings on the property, the other two buildings being operated as a furniture store and grocery, respectively, both said furniture and antique and grocery business being component parts of a common or partnership enterprise known as Husser's Store.
The motion for summary judgment filed by appellees contains the following recitation:
"Movers offer as an attachment with leave to substitute copies of the originals, all of the income tax returns showing that there never was, nor has there been a partnership known as Zeno Husser and Mrs. Rose Husser and Harvey Husser d/b/a Husser's Store.
"Your movers also attach hereto affidavits showing that they have not engaged in a joint enterprise nor, common enterprise, therefore, they are not engaged in a joint enterprise nor, common enterprise, therefore, they are not liable in solido with the defendant, Zeno Husser, for any damages he caused, or might have caused to plaintiff as a result of an alleged accident on or about January 4, 1962, in which the plaintiff allegedly suffered injuries to his back as a result of a "trick chair.'"
Notwithstanding the foregoing reference to income tax returns and affidavits no such documents were attached to appellee's motion for summary judgment nor were such returns or affidavits or any other affidavits, depositions or admissions filed of record herein. With the record consisting solely of plaintiff's petition as supplemented and amended and defendants' motion for summary judgment, (in addition to certain exceptions filed by defendants but not material to the matter presently before us), pursuant to order of the lower court trial of appellees' motion for summary judgment was held May 7, 1962, during which defendant, Rose Husser, was sworn and testified in lieu of affidavits or other documents being submitted to the court in support of appellees' said motion. Counsel for appellant offered no objection to taking the testimony of Mrs. Husser but instead acquiesced therein *493 by subjecting the witness to cross examination. After hearing the testimony of Mrs. Husser, our learned brother below held the proof adduced sustained appellees' contention no business connection or relationship existed between defendant, Zeno Husser, and appellees, consequently, there was no possibility of liability of appellees to appellant.
A motion for summary judgment is a recent innovation in the procedural law of this state. In view of the fact that LSA-C.C.P. Article 966 (authorizing motion for summary judgment) is predicated upon Rule 56 of the Federal Rules of Civil Procedure (with certain inconsequential variations), in construing the rule concerning motion for summary judgment, the courts of Louisiana will give consideration to the decision of Federal Appellate Courts interpreting and applying the motion for summary judgment rule in federal practice. Kay v. Carter, 243 La. 1095, 150 So.2d 27.
With respect to application of the summary judgment rule in practice before the Federal Courts certain guiding principles have been established. In this regard we note the following applicable pronouncements emanating from our own Supreme Court in the recent decision of Kay v. Carter, 243 La. 1095, 150 So.2d 27:
"`The proceeding authorized in Louisiana Code of Civil Procedure, Article 966 et seq. concerning summary judgments is an innovation in our practice, and there is virtually no jurisprudence from the courts of this state relating to it. However, it was adopted with only minor, immaterial variations from Rule 56 of the Federal Rules of Practice; and, consequently, we are justified in considering the jurisprudence of the federal appellate courts pertaining to its proper application.
"Those courts have laid down certain basic principles to be followed in connection with the use of Rule 56 to obtain summary judgments. As stated in Volume 6 of Moore's Federal Practice, Second Edition (numerous federal decisions are therein cited and discussed), in passing upon a motion for a summary judgment the purpose of permitting the court's examination of proffered materials extraneous to the pleadings is not that `of trying an issue but to determine whether there is a genuine issue of material fact to be tried' (page 2030); the burden is on the mover to show that there is no genuine issue of fact (pages 2111-2123 et seq.); and any doubt must be resolved against the granting of a summary judgment (pages 2114-2119). Incidentally, to a similar effect (and citing numerous federal decisions) is an annotation under Article 966 in West's Louisiana Code of Civil Procedure, it reading: `One who moves for summary judgment has burden of demonstrating clearly the absence of any genuine issue of fact and any doubt as to existence of such an issue is resolved against the movant. * * *'
"Again, in a summation of the holdings in the mentioned jurisprudence the same authority (Moore's Federal Practice), on pages 2120 and 2121, makes the following pertinent observations: `The above principles and decisions, most of which reversed the trial courts' grant of summary judgment, indicate that the trial courts had too freely granted summary judgment and allowed the procedure as an improper substitute for a live trial. * * *
"`While trial judges may feel that the appellate courts have unduly limited summary judgment and have often applied the Rule unrealistically, and some trial courts are still too prone to grant summary judgment, there is considerable evidence that the early and unsound trend in the trial courts has been checked and that district judges now recognize that summary judgments are to be cautiously granted. If there *494 is to be error at the trial level it should be in denying summary judgment and in favor of the full live trial. * * *'"
We will first consider the propriety of the trial court's action in conducting a trial of appellees' motion for summary judgment during the course of which a witness was sworn and subjected to both direct and cross examination.
The applicable statute LSA-C.C.P. Article 966, reads in full as follows:
"Art. 966. Motion for summary judgment; procedure
"The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
"The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." (Emphasis supplied by the Court)
It will be readily observed the foregoing codal authority provides motion for summary judgment shall be based upon the pleadings, depositions and admissions on file, together with affidavits, if any. The affidavits referred to in Article 966 must comply with the requirements of Article 967 LSA-C.C.P.
Concerning the scope of summary judgment as a procedural device we cite with approval the following statement of law found in 35B C.J.S. Verbo Federal Civil Procedure § 1136, page 528.
"Summary judgment is a procedural device for promptly disposing of an action, in the interest of justice, where there is no genuine issue with respect to any material facts, thereby avoiding an extended and useless trial to develop facts which are not really disputed; and its purpose is to separate real and genuine issues from mere formal or pretended issues."
We note the following comment of the redactors of our Code of Civil Procedure to Article 966:
"Even though, in all probability, it will not be successfully utilized often, the availability of the device and its potential for expeditious disposition of frivolous, but well pleaded, demands and defenses should go very far in discouraging such demands and defenses."
In discussing the hereinabove quoted redactor's comment our Supreme Court in Kay v. Carter, 243 La. 1095, 150 So.2d 27, observed the primary purpose of summary judgment procedure is apparently to minimize the judicial urging of frivolous claims.
The motion for summary judgment is not intended to take the place of a trial. It assumes a scrutiny of the facts will disclose the issues presented by the pleadings need not be tried because they are so patently insubstantial as to present no genuine issues hence, as soon as it appears upon such a motion there is really some issue to try, the trial court must deny the motion and permit the cause to proceed in the usual manner. Cohen v. Eleven West 42nd Street, 2 Cir., 115 F.2d 531.
Also appropos the issue presently before us is the following rule expressed in 35B C.J.S. Verbo Federal Civil Procedure § 1202, page 620 which we quote with approbation:

*495 "Generally, a hearing is required on a motion for summary judgment; the proceeding is in the nature of an inquiry to determine whether there is a genuine issue of fact, and it does not involve a trial or the determination of the issues."
Our brothers in the third circuit, considering this new procedural device in Touchet v. Firemen's Insurance Co. of Newark, N. J., La.App., 146 So.2d 441, relying upon sources interpretative of the Federal Procedure, in our opinion, very appropriately remarked:
"We have as yet developed very little jurisprudence in Louisiana on summary judgments because this procedural device did not become a part of our law until the effective date of the Code of Civil Procedure on January 1, 1961. However, there are many Federal cases dealing with summary judgments under Federal Rule 56, Vol. 3, Barron & Holtzoff, Federal Practice and Procedure, Sections 1231-1247, discusses the history and development of summary judgment under Federal Rule 56. This excellent text states that the primary purpose of the summary judgment is to secure the prompt disposition of cases on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved. This text also states that the only question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined. The hearing on the motion is not a trial. If it appears that there is a genuine issue to be tried, the motion should be denied and the case allowed to proceed to trial in the usual way." (Emphasis supplied by the court.)
In Kay v. Carter, supra, our Supreme Court observed (in line with what we perceive to be established Federal jurisprudence), that the purpose of permitting a trial court's examination of material extraneous to the pleadings in disposing of a motion for summary judgment is not that of trying or resolving a factual issue but simply to determine whether there is a genuine issue of material fact to be tried. We believe the provisions of Article 966 LSA-C.C.P. clearly indicative of the principle a motion for summary judgment is not intended to be in the nature of a trial of a factual issue and in keeping therewith we believe our learned brother below erred in treating appellees' motion as an opportunity to resolve and decide factual issues rather than a procedural device to determine whether or not a genuine issue of fact existed as evidenced by the pleadings, affidavits, depositions and admissions on file. We further believe our esteemed brother below erred in predicating his ruling on appellee's motion solely on the testimony of movant taken upon hearing of the motion for summary judgment in the same manner as though trial of the motion were trial of an issue of fact. We reiterate that Article 966 LSA-C.C.P. contains no authority for the examination of a litigant by direct and cross examination upon the trial of such motion. By the express terms of the Article, trial of such motions must be on the pleadings, affidavits, depositions and admissions on file. Of considerable significance in the case at bar is the fact the record is totally devoid of any document or evidence of the nature alluded to in the applicable article. Under such circumstances the allegations of plaintiff's petition must be accepted as true. Lee v. City of Baton Rouge, 243 La. 850, 147 So.2d 868.
Granting only one witness testified on the trial of appellees' motion and conceding further said witness's appearance was apparently with the consent of counsel for all parties concerned, nevertheless, to sanction such procedure can have no practical effect save the fostering and encouragement of piecemeal trials and appeals. We note that in Beckham v. Hartford Accident & Indemnity Company, La.App., 137 So.2d 99, *496 it was held there could be no summary judgment on the issue of liability alone, leaving the question of damages for trial. We further observe that in the Beckham case, supra, our esteemed brothers very properly noted "the prime purpose of all of our new rules of procedure * * * is to secure the just, speedy and inexpensive determination of every action." Since summary judgments are appealable, the court pointed out in the Beckham case that a procedural device which would permit or encourage piecemeal trials and appeals is incompatible with the rationale of the summary judgment procedure.
Moreover, the learned trial judge obviously ignored appellant's alternative contention of liability on the part of appellees by virtue of appellees having knowingly permitted a dangerous trap to exist on premises owned by appellees. Appellees' alleged ownership of the premises and knowledge of the existence of a trap permitted to be maintained thereon are questions of fact to be determined upon the trial of this matter on its merits. Assuming said facts to be established, the alleged liability resultant therefrom is, of course, a question of law.
It appears well settled that an owner may be liable for injuries caused by the defective condition of premises whose possession has been entrusted to others. In Volume 65 C.J.S. Verbo Negligence § 92, page 604, the rule is stated thusly:
"An owner of property or premises may be liable for an injury not only where it was caused by the negligent acts of persons upon the premises, for whose acts he is responsible and over whose acts he exercises control, but also where it was caused by an act, connected with the property, which he permitted another to do, or by a defective or dangerous condition of the premises which he permitted another to create." (Emphasis by the Court)
In 65 C.J.S. Verbo Negligence § 92a, page 606, the rule regarding the owner's liability for injury resulting from the condition of premises in possession of a licensee is stated as follows:
"An owner of premises may be liable for injuries caused by their defective or dangerous condition even though they are in the possession of a licensee. Generally speaking, however, an owner of land is not liable for an injury caused by the acts of a licensee unless such acts constitute a nuisance which the owner knowingly suffers to remain."
It follows, of course, that the alleged liability of an owner for the acts of a third person respecting the condition of the owner's premises, can only be resolved in the light of a full disclosure of all facts and circumstances bearing upon the relationship between the owner and such third person. Obviously evidence must be adduced before any such determination may be made
Movants in the case at bar have failed to establish the absence of a genuine issue of material fact. Summary judgment, which deprives a litigant of a trial on the merits, is not a substitute for such a trial and is to be granted by trial courts only in those instances clearly falling within the provisions of the applicable codal authority. In disposing of a motion for summary judgment, the trial courts are urged to bear in mind the cardinal rules that movant bears the burden of clearly establishing the absence of any genuine issue of material fact and that all reasonable doubts must be resolved against the mover. LSA-C.C.P. Article 966; Haspel v. Treece, La.App., 150 So.2d 120; Jacobs v. Beck, La. App., 141 So.2d 920.
For the reasons hereinabove expressed, it is ordered, adjudged and decreed the judgment of the trial court granting appellees' motion for summary judgment and dismissing and rejecting appellant's demand *497 as to defendants, Rose Husser and Harvey Husser, be and the same is hereby annulled, reversed and set aside and this cause remanded to the court below for further proceedings consistent with the views herein set forth.
Reversed and remanded.
ELLIS, J., recused.