149 So.2d 697 (1963)
Sidney FREYOU, Plaintiff-Appellant,
v.
MARQUETTE CASUALTY COMPANY, Defendant-Appellee.
No. 737.
Court of Appeal of Louisiana, Third Circuit.
January 28, 1963.
Dissenting Opinion January 30, 1963.
Rehearing Denied February 20, 1963.
Certiorari Refused March 25, 1963.
*698 Simon & Trice, by Phil Trice, Lafayette, for plaintiff-appellant.
Helm, Simon, Caffery & Duhe, by Patrick T. Caffery, New Iberia, for defendant-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
Plaintiff brought suit individually and on behalf of his minor daughter, Phyllis Freyou, for personal injuries and loss of wages sustained by the daughter and for medical and hospital bills paid by plaintiff.
The petition alleges that on December 10, 1960, at about 11:30 P.M. his then 20-year-old daughter was a guest passenger in a Chevrolet truck owned by defendant's named insured under a liability policy issued by it, and being driven, at the time, by Sidney Schexnayder, III, the named insured's son, with the insured's permission; that the driver, proceeding in a northerly direction about six (6) miles south of New Iberia, Louisiana, and at a speed of about 60 miles per hour, lost control of the vehicle, whereupon it collided with a culvert and overturned. Plaintiff alleges negligence on the part of the driver in failing to keep *699 a proper lookout; failing to maintain proper control; and driving at an excessive speed.
The defendant insurer answered plaintiff's petition, generally denying its material allegations; alleging that there was no negligence on the part of the driver for the reason that the accident was caused by the collapse of a rear wheel, or a blowout or some other cause beyond the driver's control, and was, therefore, unavoidable; and alternatively, that the driver and plaintiff's daughter were on a joint mission or venture, thus making any negligence of the driver imputable to her, and/or that she was contributorily negligent.
After defendant's answer had been filed, the depositions of Sidney Schexnayder, III, Phyllis Freyou, and Ernest Crochet, Jr. were taken. At the taking of the depositions, it became quite apparent that these three young people had, until that time, been withholding pertinent facts about how the accident had happened. It appears from the record that they had been untruthful to their respective parents and to counsel for both plaintiff and defendant, saying simply that none of them knew exactly what had happened and/or that a rear wheel had collapsed.
However, from their depositions, it appears that these young people, all between 17 and 20 years of age at the time of the accident, had, along with Jan Babin, another young girl, met at a night club on the night of the accident. They left the night club about 11:30 P.M. in two (2) vehicles, Sidney Schexnayder, III and Phyllis Freyou in one, and Ernest Crochet, Jr. and Jan Babin in the other. As Schexnayder attempted to pass the other automobile, for some reason not entirely clear from the record, he applied his brakes so as to drop back into his following position, and at that moment the truck went out of control, running off the road on the left-hand side. These details were not revealed until the depositions were taken, some 13 months following the accident.
Thereafter, defendant filed a motion for summary judgment, taking the position that the cooperation clause of its policy had been violated and that it was, therefore, relieved of any liability.
The district court upheld the motion and granted summary judgment in defendant's favor, dismissing plaintiff's suit, from which judgment plaintiff has brought this appeal.
Plaintiff contends, first, that summary judgment was not the proper procedure for disposition of the matter; and second, that in no event was defendant prejudiced in its defense to the extent that plaintiff's suit should have been dismissed.
Defendant contends, in effect, that it cannot now properly defend the suit due to the prior lack of cooperation which, of itself, voided the contract of insurance.
First, with respect to whether or not summary judgment was the proper procedure, it seems to us that there is no genuine factual issue regarding the lack of cooperation up until the time the depositions were taken. That then left the question of whether or not defendant mover was entitled to judgment as a matter of law on the basis of lack of cooperation. LSA-C.C.P. Article 966 reads, in part:
"The judgment sought shall be rendered forthwith if * * * there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
It appears to us, then, that the district court properly disposed of the matter by summary judgment as a matter of procedure.
We do not, however, agree with our learned brother of the district court that the circumstances of the instant case necessitate a dismissal of plaintiff's suit. From our view of the jurisprudence we have reached two (2) conclusions: That each case rests on its own facts and circumstances, and that a breach of the cooperation clause must be both material and *700 prejudicial. Baham v. Stilley, (La.App., 1 Cir., 1960), 122 So.2d 884; Lindsey v. Gulf Insurance Company, et al, (La.App., 2 Cir., 1942), 7 So.2d 757; Upshaw v. Great American Indemnity Company, (La.App., 2 Cir., 1959), 112 So.2d 125; Broussard v. Broussard, (La.App., 1 Cir., 1956), 84 So.2d 899; Elba v. Thomas, (La.App., Orl., 1952), 59 So.2d 732; Garland v. Audubon Insurance Company, (La.App., 1 Cir., 1960), 119 So. 2d 530.
As applied to the instant case, an examination of the record shows that plaintiff's suit was filed on September 27, 1961; on November 7, 1961, plaintiff fixed the case for trial on February 12, 1962; on January 22, 1962, defendant obtained a refixing for March 16, 1962; on January 24, 1962, defendant filed its answer; on January 29, 1962, the depositions herein referred to were taken; on February 21, 1962, defendant filed its motion for summary judgment. It thus appears that when the depositions were taken on January 29, 1962, the then scheduled trial date was a little better than a month and a half away, and that defendant had only filed its answer on January 24th. While we are sure that the young peoples' change of heart was a surprise to all concerned, plaintiff as well as defendant, we do not feel that under the circumstances of this case any real prejudice resulted. We are dealing here with young people who were apparently afraid to divulge the details of their escapade and who, finally faced with making a statement under oath, realized the error of their ways. We do not condone it, but realize that such things happen on occasion. All things considered, we are of the opinion that the interests of justice require a trial on the merits.
For the reasons assigned, the summary judgment appealed is reversed and set aside, and this case is remanded to the district court for further proceedings. All costs of this appeal are assessed against defendant.
Reversed and remanded.
CULPEPPER, Judge (dissenting).
I agree with the majority opinion that under the pleadings and depositions filed in this case there is no genuine issue as to material fact preventing the consideration of the motion for summary judgment. L.S.A.-CCP Art. 966; Touchet v. Firemen's Insurance Company of Newark, New Jersey, 146 So.2d 441 (3rd Cir.La. App.); McDonald v. Grande Corporation, 148 So.2d 441 (3rd Cir.La.App.); Walmsley v. Gilmore, 144 So.2d 625 (4th Cir.La. App.); Jacobs v. Beck, 141 So.2d 920 (4th Cir.La.App.); Snell v. Intercoastal Airways, Inc., 139 So.2d 70 (4th Cir.La.App.). However, I cannot agree that as a matter of law the false statement made by the insured driver did not constitute a breach of the cooperation clause.
The "conditions" section of the policy provides the following, which is a standard cooperation clause: "The insured shall cooperate with the company, and upon the company's request shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits * * *."
It is now well settled in our jurisprudence that the making of a false statement by the insured to the insurer constitutes a breach of the cooperation clause, where the false statement is material, given in collusion with the claimant, and is prejudicial to the insurer. See the cases cited in the majority opinion and the general statement of the law found in 29A Am.Jur. 586, Verbo "Insurance", Section 1476.
In the present matter, there is no question that the admittedly false statement given by young Schexnayder to the defendant insurer was material. His first statement said that the accident was not caused through his fault, but by the rear wheel coming off the truck, causing him to lose control and run into the ditch. His second statement, given about a year later, said that he was in the process of passing another *701 vehicle when he applied his brakes, swerved to the left and ran off the road. Clearly these discrepancies in the two statements were not minor details nor the result of an honest mistake. The discrepancies involved the very cause of the accident, and were clearly material to the insured's defense.
Furthermore, young Schexnayder admitted that his false statement was made in collusion with Phyllis Freyou, his guest passenger, who is the injured claimant in these proceedings. Also in collusion was Ernest Crochet, Jr., the young man who was in the other vehicle. All three of these young people admitted that soon after the accident they conferred and agreed to give their first false explanation of the cause of the accident.
The only real issue of law in this case is whether the making of the false statement by the insured was prejudicial to the insurer. In deciding this issue, the first question is whether the insurer was prejudiced where the first statement, favorable to the insurer, was false and the second statement, which was unfavorable to the insurer, was true. I think it is clear that there is prejudice where the false statement is the one that is unfavorable to the insurer. See Broussard v. Broussard, La. App., 84 So.2d 899, where the second untruthful statement was unfavorable to the insurer. See also the general discussion in 29A Am.Jur. 586, Verbo "Insurance" Section 1476. However, I think there may also be prejudice where the first statement, favorable to the insurer, was false, and the second statement, unfavorable to the insurer, was true. This was the holding in Baham v. Stilley, 122 So.2d 884 (1st Cir. La.App.1960). See also 29 Am.Jur. 586, Verbo "Insurance", Section 1476 and 34 A.L.R.2d 268 for the citation of other authorities to this effect. In my view, one of the fundamental purposes of the cooperation clause is to enable the insurer to obtain from the insured driver a true statement of the facts of the accident. The insurer needs the true facts, in order to properly evaluate any claims arising out of the accident. As is stated by the court in Metropolitan Casualty Insurance Company of New York v. Richardson, D.C., 81 F. Supp. 310: "Truthfulness seems to be the keystone of the co-operation arch. The insured must tell his insurer the complete truth concerning the accident, and he must stick to this truthful version throughout the proceedings. He must not embarrass or cripple his insurer in its defense against a civil suit arising out of the accident by switching from one version to another. * * *"
The next question which arises, with reference to prejudice, is whether the withdrawal and correction of the false statement by young Schexnayder, approximately six weeks before the date on which the case was set for trial, was sufficiently prompt and in advance of trial to afford the insurer an opportunity to avoid its prejudicial effects. Plaintiff's argument is that the defendant still had six weeks before trial within which to change and prepare its defense as necessary and this obviates any prejudice.
I find that in at least two Louisiana cases the insured withdrew his first statement much more than six weeks prior to the trial date and the court, in both cases, found there was a violation of the cooperation clause. Broussard v. Broussard, supra, and Baham v. Stilley, supra. See also 29A Am. Jur. 587, Verbo "Insurance", Section 1477. In the present case, young Schexnayder persisted in his false statement for about a year after the accident. He gave this false statement to both the adjuster and the attorney for the defendant insurer. He even went to the scene of the accident with the insurer's attorney to point out the physical circumstances substantiating his false statement. The insurer drew its pleadings and prepared its defense in accordance with this false statement. Under such a statement, as corroborated by the other two witnesses with whom the insured was in collusion, the insurer obviously had a meritorious defense. Lacking a true statement of the *702 facts, the insurer was deprived of knowledge essential to negotiation of a settlement. Only six weeks before the date of the trial, the insured changed his story. This required that the insurer seek to change its defense. It necessitated a change in its pleadings, and a search for witnesses and physical evidence which had now become stale. In my opinion the withdrawal and correction of the false statement was not sufficiently prompt and seasonable to remove the prejudice.
Plaintiff makes the additional contention that young Schexnayder, who was an insured under the "omnibus clause", rather than the named insured, was not obligated to cooperate under the provisions of the policy. Plaintiff cites Maryland Casualty Co. v. Lopopolo, 9 Cir., 97 F.2d 554, a 1938 California case which appears to support this contention. I cannot agree with this position. The policy states that "The insured shall cooperate * * *." Section III of the insuring agreement states that "* * * the unqualified word `insured' includes the name assured and * * * any person while using the automobile * * * with the permission (of the named assured or his spouse) * * *." This language is clear and unambiguous. Furthermore, the very purpose of the cooperation clause is to enable the insurer to obtain from the insured driver a true statement of the facts of the accident. In this case young Schexnayder, not his father, was the insured driver who was bound to cooperate.
No Louisiana cases are cited which discuss the issue, but in Baham v. Stilley, La.App., 122 So.2d 884, the driver was Mrs. Stilley, an additional insured, and the court found she had violated the cooperation clause.
For the reasons assigned, I respectfully dissent.

On Application for Rehearing.
En Banc.
PER CURIAM.
In its application for rehearing, the defendant appellee forcefully urges that we were in error in our original opinion in concluding that the insured's change of story six weeks before the trial did not constitute a breach of the cooperation clause defeating coverage.
A mere change in the version of accident initially given by the insured to the insurer's adjuster does not constitute a breach of the cooperation clause. The insurer bears the burden of proving that the change is both material and truly prejudicial. See cases cited in original opinion and in dissent.
As noted in Elba v. Thomas, La. App.Orl., 59 So.2d 732, the purpose of the cooperation clause is simply to require the insured to disclose all the facts within his knowledge and otherwise to aid the company to determine its liability under the policy; it is not, however, the obligation of the insured to assist the company to defeat recovery of a just claim or to testify falsely for it.
At the moment of the accident, the insurer is liable for all the damages caused thereby, if its insured's negligence was a contributory cause. If immediately following the accident the insurer's adjuster procures a version of the accident from its insured which is favorable to the insurer, even though the true facts are not actually as favorable to the insurer's defense, the insurer is not necessarily prejudiced at that time by the false and unduly favorable version. For the insurer is still under the true facts fully liable for the damages caused by the accident, whether or not its own insured has (with or without the prompting of the insurer's adjuster) furnished to the insurer a self-exculpating version of the accident.
A change by the insured from a favorable version given right after the accident to a more unfavorable version some *703 time later, has been held not to be prejudicial so as to constitute a breach of the cooperation clause, unless the second or inculpating version is the false one. Garland v. Audubon Insurance Co., La.App. 1 Cir., 119 So.2d 530 (syllabus 3), certiorari denied. See also: Bordelon v. Audubon Insurance Co., La.App. 1 Cir., 116 So.2d 148 (where the insurer was informed of the true version of the accident just ten minutes before the trial); Broussard v. Broussard, La.App. 1 Cir., 84 So.2d 899 (where the cooperation clause was held to be breached upon the express finding that the second or less favorable version of the accident was the false one and was deliberately designed in collusion with the plaintiff to inculpate the insurer, see 84 So.2d 903, 904).
In the present instance, the young people had minimized the fault of the driver in their initial statements to the defendant's adjuster, explaining that the insured lost control of the insured vehicle because the rear wheel came off it. However, they could not repeat the false version of the accident under oath, as a result of which six weeks before the trial the insurer learned of the true version of the accident, when it took the depositions of the young driver and passengers of the automobile and learned that the driver had lost control of the truck when he applied his brakes while passing another vehicle. (In passing, it might be observed that it is entirely possible that the insurer was liable under either version of the accidentthe unexplained mechanical failure of the insured vehicle does not necessarily exculpate from liability the insured owner or member of the owner's family driving the vehicle, see, e. g., Breaux v. Valin, La.App. 3 Cir., 138 So.2d 405. If the insurer was liable under either version, then the change in versions is not material or prejudicial. Bordelon v. Audubon Ins. Co., cited above.)
The evidence is bare of implication that the insured colluded with the plaintiffs in order to inculpate the insurer by testifying to a false version of the accident. The evidence also indicates that he informed the insurer of the true version of the accident several weeks prior to the trial, when he was called upon to testify under oath at a discovery deposition. There is no showing that at that time the insurer was with regard to its liability in a substantially different position than it would have been if the initial statement procured from its insured by the adjuster had disclosed the same facts as those to which the insured testified at the discovery deposition. There is thus no showing that the insurer was materially prejudiced by the change in version.
The position of the insurer apparently is that the insured would not have breached the cooperation clause if he had stuck to the version given to the insurer's adjuster immediately after the accident. The injured party then would have been entitled to recovery, upon the preponderance of the evidence proving the unexplained loss of control on the part of the insured. We are unable to hold that a different result should follow because the insured testified truly to the actual facts at the discovery deposition, instead of perjuring himself by repeating the false version of the accident procured from him immediately after it.
It should be reiterated that the actual question before us is only whether the mover for a summary judgment has clearly proved that there is no genuine issue of fact, so that he (it) is entitled to the summary judgment remedy, McDonald v. Grande Corporation, La.App. 3 Cir., 148 So.2d 441. Resolving all reasonable doubts against the mover, as we are required to do, we have simply held that the mover has not borne his burden of proving he is clearly entitled to the summary judgment remedy.
For the foregoing reasons, the application for rehearing is denied.
Application for rehearing denied.
CULPEPPER and HOOD, JJ., are of the opinion a rehearing should be granted.